UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KEICIA JONES,**<br>    Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-6492** |
| **CHILDREN'S HOSPITAL ET AL.,**<br>    Defendants | **SECTION "E"** |

## ORDER & REASONS

The Court has pending before it Defendants Children's Hospital and Walter Pierre, Jr.'s Motion for Summary Judgment against Plaintiff, Keicia Jones.[1] The Court has reviewed the briefs,[2] the record, and the applicable law, and now issues this Order and Reasons.

## BACKGROUND

Plaintiff, Keicia Jones ("Jones"), is a former employee of Defendant Children's Hospital ("the Hospital") and started working as a PBX (Switchboard) Operator in January of 2009.[3] In late January of 2013, she applied for intermittent leave under the Family and Medical Leave Act ("FMLA") to care for her ill husband and take him to dialysis treatment.[4] The request was approved by the Hospital on February 5, 2013.[5] Jones testifies that shortly after her leave request was approved, her supervisor, Defendant Walter Pierre, Jr. ("Pierre"), told her that she could not take the FMLA leave because the Hospital was short-staffed at her position.[6] A few months later on June 26,

---

[1] R. Doc. 23.
[2] *Id.* (Defendants' Motion for Summary Judgment); R. Doc. 29 (Plaintiff's Opposition); R. Doc. 34 (Defendants' Reply); R. Doc. 41 (Plaintiff's Memorandum of Law on the Mixed Motive Standard in FMLA Cases); R. Doc. 45 (Defendants' Supplemental Reply).
[3] R. Doc. 1 at p. 2.
[4] R. Doc. 29-1 at p. 10.
[5] *Id.*
[6] R. Doc. 29-9 at p. 3 (Exhibit 3—Plaintiff's Affidavit); R. Doc. 29-9 at pp. 100, 105, 107 (Exhibit 1c—Jones's Deposition).

1

2013, Jones was terminated from her employment.[7] The stated reason was for "rude offensive angry threatening behavior toward other employees and spending excessive time on a personal call while on duty."[8]

Jones filed suit against the Hospital and Pierre on November 22, 2013 alleging that the reason given for her termination was pretextual.[9] Jones's Complaint claims that she was really terminated in retaliation for requesting FMLA leave or her likelihood of requesting FMLA leave again, and she further alleges that her supervisor, Pierre, interfered with her right to leave under the FMLA and that the Hospital negligently supervised its employees.[10] Defendants filed the instant motion for summary judgment with respect to all of Plaintiff's claims: FMLA retaliation, FMLA interference, and negligent supervision.[11]

Defendants Children's Hospital and Walter Pierre, Jr. assert in their motion for summary judgment that Jones was not retaliated against but instead was terminated after an alleged incident occurred while she was on duty during which Jones made threatening remarks to her co-workers and was on a personal phone call for an excessive period of time, all in violation of the Hospital's policies.[12] Further, Plaintiff had a documented history of unprofessional conduct.[13] Defendants state that although Pierre

---

[7] R. Doc. 29-1 at p. 19.
[8] R. Doc. 1 at ¶ 13.
[9] *Id.* Plaintiff's opposition to Defendants' motion for summary judgment and her memorandum of law on the mixed-motive standard in FMLA cases make clear that Plaintiff has abandoned the "but for" causation standard in favor of the mixed-motive framework. R. Doc. 29 at p. 13; R. Doc. 41. Thus, Plaintiff now "concedes that discrimination was not the sole reason for her discharge, but argues that discrimination was a motivating factor in her termination." R. Doc. 41 at p. 2 (stating "[t]his is such a case" after discussing when the mixed-motive framework is the appropriate framework to apply).
[10] R. Doc. 1. at pp. 1, 5.
[11] R. Doc. 23 at pp. 1–2.
[12] R. Doc. 23-1 at pp. 2–3.
[13] *Id.* at pp. 3, 14–15 ("Plaintiff received five (5) separate counseling notifications during the course of her employment and <u>before</u> she requested FMLA leave. Just in the four (4) month period before Plaintiff requested FMLA, she received two (2) separate counseling notifications for complaints of rude and unprofessional behavior, one in which Mr. Miranda noted: . . . Keicia was warned that if her performance

had knowledge of her protected status he did not interfere with her taking leave and actually approved multiple leave requests made by Jones.[14] Additionally, they contend Pierre was not involved in the decision to terminate her, and neither the recommender of Plaintiff's termination, the Director of Materials Management and Communications of the Hospital Dennis Miranda ("Miranda"), nor the ultimate decision maker, the Vice President of Human Resources Douglas Mittelstaedt ("Mittelstaedt"), was aware of the fact that Plaintiff had requested and been approved for intermittent FMLA leave.[15] Plaintiff responds that the motion should be denied because there are genuine issues of material facts.[16]

## STANDARD OF LAW

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17] "An issue is material if its resolution could affect the outcome of the action."[18] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[19] All reasonable inferences are drawn in favor of the non-moving party.[20] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter

---

did not improve that further disciplinary action would be taken, including termination.").
[14] *Id.* at pp. 2, 8.
[15] *Id.* at p. 7.
[16] R. Doc. 29 at p. 1; R. Doc. 29-1.
[17] Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[18] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[19] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). S*ee also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[20] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

of law.[21]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[22] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden then shifts to the non-moving party to show that a genuine issue of material fact exists.[23] Once the burden has shifted, the non-moving party must direct the Court's attention to something in the pleadings or other evidence in the record that sets forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[24]

If the dispositive issue is one on which the non-moving party will bear the burden of proof at trial, however, the moving party may satisfy its burden by simply pointing out that the evidence in the record is insufficient with respect to an essential element of the non-moving party's claim.[25] The non-moving party must then respond, either by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party" or by coming forward with additional evidence.[26] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift

---

[21] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[22] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[23] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[24] *Id.* at 324.
[25] *See id.* at 325.
[26] *Id.* at 332–33, 333 n.3.

4

through the record in search of evidence to support a party's opposition to summary judgment.'"[27]

## ANALYSIS

Plaintiff Jones brings two FMLA claims against Defendants, one under the FMLA's retaliation clause and the other under the FMLA's interference clause, both of which Defendants argue should be dismissed on summary judgment. The FMLA's interference clause "prohibits employers from 'interfer[ing] with, restrain[ing], or deny[ing] the exercise or the attempt to exercise, any right provided under' the [A]ct."[28] Additionally, under the FMLA's retaliation clause, employers may not discriminate or retaliate against an employee for exercising her rights under the act.[29] Plaintiff also asserts that the Hospital negligently supervised and trained its employees.[30]

The parties dispute the following issues: whether Jones made any threatening statements to her co-workers,[31] whether Pierre had any involvement in making the decision to terminate Jones,[32] whether Pierre denied or interfered with Plaintiff's ability to take FMLA leave,[33] and whether Plaintiff actually took any FMLA leave.[34] The following facts, however, are undisputed: Pierre received written statements from Hospital employees regarding an incident on June 25, 2013 during which Plaintiff allegedly threatened her co-workers, and Pierre submitted those statements to

---

[27] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[28] *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005) (alterations in original) (quoting 29 U.S.C. § 2615(a)(1)).
[29] *Bocalbos v. Nat'l Western Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998).
[30] R. Doc. at 1 at p. 5.
[31] R. Doc. 29-1 at pp. 15–18.
[32] *Id.* at pp. 3, 20–21.
[33] *Id.* at pp. 10–11, 22.
[34] *Id.* at pp. 11–12.

Miranda;[35] after Miranda reviewed the statements and checked the Hospital's phone records, he determined that Plaintiff violated the Hospital's policies by making threats against co-workers and by being on a personal call for an excessive period of time;[36] Miranda contacted Mittelstaedt to discuss the allegations regarding the incident and shared with him the written statements by Plaintiff's co-workers;[37] they additionally discussed Plaintiff's performance history, as reflected in her past performance appraisals and counseling notifications, indicating that she had previously been warned about her behavior;[38] Miranda recommended that Plaintiff's employment be terminated;[39] Mittelstaedt accepted Miranda's recommendation and approved the termination, but he instructed Miranda to speak with Jones "to hear her side of the story first and to determine if there were any extenuating facts that would justify an action short of termination;"[40] after Plaintiff denied being verbally abusive or threatening her co-workers, Plaintiff's employment was terminated effective June 26, 2013, the day after the incident.[41]

FMLA Retaliation Claim

Jones alleges that the Hospital retaliated against her for taking FMLA leave by terminating her employment.[42] The FMLA "prohibits employers from discharging or in any other manner discriminating against an individual for opposing any practice made unlawful by the act. The Department of Labor has interpreted this statutory provision to forbid employers from terminating employees for having exercised or attempted to

---

[35] *Id.* at p. 18.
[36] *Id.* at pp. 18–19.
[37] *Id.* at p. 19.
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.* at pp. 19–20.
[42] R. Doc. 1 at p. 4.

exercise FMLA rights."[43]

> To make a prima facie case of retaliatory discharge, the employee must show that (1) she engaged in a protected activity, (2) the employer discharged her, and (3) there is a causal link between the protected activity and the discharge. When there is no direct evidence of discriminatory intent, . . . the familiar *McDonnell–Douglas* burden shifting framework [is used] to determine whether an employer discharged an employee in retaliation for participating in FMLA-protected activities. Specifically, once the employee establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the employer succeeds in doing so, the burden shifts back to the employee to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination.[44]

In this case, however, Plaintiff argues that the Court should not apply the traditional *McDonnell-Douglas* framework but should instead apply the mixed-motive framework as articulated in *Richardson v. Monitronics International, Inc.*[45] In *Richardson*, the Fifth Circuit stated that "[t]he traditional *McDonnell-Douglas* framework does not always apply in FMLA retaliatory discharge cases . . . . The mixed-motive framework applies to cases in which the employee concedes that discrimination was not the *sole* reason for her discharge," but rather "*a* motivating factor in her termination."[46] Thus, Plaintiff now concedes that discrimination was not the sole reason

---

[43] *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013) (citing 29 U.S.C. § 2615(a); 29 C.F.R. § 825.220(c)).
[44] *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005) (citing *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001)).
[45] R. Doc. 29 at p. 13; R. Doc. 41 at pp. 1–2 (citing 731 F.3d 379 (5th Cir. 2013)). Plaintiff's Complaint states that the reason given to Jones for her termination "[was] pretextual. Jones was not guilty of any offensive behavior and the only calls she ever made from work had to do with her husband's immediate and life-critical health needs. The real reason Jones was terminated was that Jones'[s] ongoing need to care for her husband was inconvenient for Children's Hospital and for Walter Pierre, Jr. Pierre regarded it to be likely that Jones would again apply for FMLA as her husband's health continued to deteriorate. The decision to terminate Jones was also, or in the alternative, made in retaliation for her earlier attempt to obtain FMLA." R. Doc. 1. at p. 4. Plaintiff's opposition to Defendants' motion for summary judgment and her memorandum of law on the mixed-motive standard in FMLA cases make clear, however, that Plaintiff has abandoned the "but for" causation standard in favor of the mixed-motive framework. Thus, Plaintiff now "concedes that discrimination was not the sole reason for her discharge, but argues that discrimination was a motivating factor in her termination." R. Doc. 41 at p. 2; R. Doc. 29 at p. 13.
[46] *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005).

for her discharge but argues that discrimination was a motivating factor in her termination.[47]

Under the mixed-motive framework, the employee still must make a *prima facie* case as articulated above, and, if she does, the employer still must articulate a non-discriminatory reason. However, the third step is modified:

> [T]he employee must offer sufficient evidence to create a genuine issue of fact either that (a) the employer's proffered reason is a pretext for discrimination, or—and herein lies the modifying distinction—(b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination. If the employee proves that discrimination was *a* motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have taken the same action despite the discriminatory animus.[48]

Defendants argue that the Court should not apply the mixed-motive framework in light of two Supreme Court decisions handed down after the Fifth Circuit decided *Richardson*.[49] In *University of Texas Southwestern Medical Center v. Nassar* and *Gross v. FBL Financial Services, Inc.*, the Court "determined that the 'but for' analysis should apply to retaliation claims raised under Title VII and the Age Discrimination in Employment Act."[50] Defendants argue that the Court's decision in *Nassar* is fatal to the mixed-motive framework for FMLA retaliation claims as articulated in *Richardson* because the framework for FMLA retaliation claims is derived from Title VII.[51] Although a few courts have addressed the impact of *Nassar* with respect to FMLA retaliation claims, "most . . . have declined to resolve the question definitively,"[52] and "the courts

---

[47] R. Doc. 41 at p. 2.
[48] *Richardson*, 434 F.3d at 333.
[49] R. Doc. 43-2 at pp. 2–3.
[50] *Id.*; 133 S. Ct. 2517 (2013); 557 U.S. 167 (2009).
[51] R. Doc. 43-2 at pp. 3–4.
[52] *Nigh v. School Dist. of Mellen*, ---F. Supp. 3d---, 13-183, 2014 WL 4794521 at *19 (W.D. Wis. Sept. 25, 2014) (discussing *Nassar* and the courts that have addressed *Nassar*'s impact). *See also Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389–90 (5th Cir. 2013) (declining to resolve the question of *Nassar*'s impact).

that *do* resolve the question do not agree."[53] The Fifth Circuit has not determined whether the reasoning of these cases also applies to FMLA retaliation claims.[54] Thus, the proper standard of causation to apply remains unclear. The Court also declines to resolve this question, finding that irrespective of which standard should be applied, Plaintiff cannot survive summary judgment on her retaliation claim under either the more rigid "but-for" causation standard or the less demanding "motivating factor" standard.

Under both standards, Plaintiff must first establish a *prima facie* case by showing that (1) she was protected under the FMLA, (2) she suffered an adverse employment action, and (3) the adverse action was taken because she sought protection under the FMLA.[55] It is undisputed that the first two elements of Plaintiff's *prima facie* case are met.[56] However, Defendants argue that Plaintiff cannot make a *prima facie* case of FMLA retaliation because she cannot prove the third element: causation.[57] Thus, Defendants assert they are entitled to summary judgment with respect to Jones's FMLA retaliation claim. Even though Plaintiff's evidence at this stage is thin, especially with respect to the decision maker's knowledge of her protected status, the requirement of showing "causation . . . at the prima facie stage is much less stringent than a 'but for' causation,"[58] and the Court must draw all reasonable inferences in Plaintiff's favor on this motion for summary judgment. Thus, the Court will assume without deciding that

---

[53] *Nigh*, 2014 WL 4794521 at *19.
[54] *See Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2013) (stating that "we need not, and do not, decide whether *Nassar*'s analytical approach applies to FMLA-retaliation claims and, if so, whether it requires a plaintiff to prove but-for causation" because the parties did not "urge[] the court to revisit the applicability of the mixed-motive analysis" and "conclud[ing] that a genuine issue of material fact exist[ed] under either standard").
[55] *See id.* at 390.
[56] *See* R. Doc. 23 at p. 6.
[57] *Id.* at pp. 6–9.
[58] *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001).

Plaintiff has established a *prima facie* case of retaliation.[59]

After the *prima facie* case of retaliation is established, the burden shifts to the employer under both the "but for" and "motivating factor" standards to articulate a legitimate, non-discriminatory reason for terminating the employee. In this case, the Hospital provided legitimate, non-discriminatory grounds for terminating Jones's employment, including her engaging in threatening behavior towards her co-workers and being on a personal phone call for an excessive period of time.[60] Additionally, Jones had a documented history of performance problems.[61] These reasons given by Defendants are sufficient to shift the burden back to Jones.

In the third step, Jones "bears the burden of offering sufficient evidence to create a genuine issue of fact that" the reasons given by the Hospital for her termination were a pretext for discrimination or that the Hospital's nondiscriminatory reasons "although true, [were] only some of the reasons for its conduct, another of which was discrimination."[62] Plaintiff does not meet this burden because she has failed to tie her termination to her request for FMLA leave or show that the Hospital did not terminate her for the reasons given relating to the incident reported by Jones's co-workers.[63]

Plaintiff argues that a reasonable jury could find the Hospital's stated reasons for her termination were pretextual, so genuine issues of material fact exist.[64] In so arguing, Plaintiff relies on her testimony that Pierre told her in February of 2013 that she could

---

[59] *See Sanchez v. Dall./Fort Worth Int'l Airport Bd.*, 438 F. App'x 343, 346 (5th Cir. 2011).
[60] "Plaintiff was terminated because Mr. Miranda and Mr. Mittelstaedt reasonably believed, in good faith, that she engaged in a barrage of threatening and offensive behavior toward her co-workers while on a personal call for thirty[-three] (33) minutes." R. Doc. 23-1 at p. 9.
[61] These problems occurred prior to her requesting FMLA leave. R. Doc. 23-1 at pp. 14–15. Her performance records also indicate that notice was given to Plaintiff that future problems could result in termination. R. Doc. 23-4 at p. 13 (Exhibit 2-B).
[62] *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 391 (5th Cir. 2013).
[63] *See Sanchez*, 438 F. App'x at 346–47.
[64] R. Doc. 29 at p. 21.

not take FMLA leave and her supposition that because "Pierre provided employment information to Miranda prior to her termination" and "Miranda spoke with Mittelstaedt . . . prior to Jones'[s] termination," a reasonable jury could find that the decision to terminate her was made at least in part because of her protected status.[65] However, in establishing a retaliation claim, "[t]he proffered evidence must be sufficient to permit a reasonable fact finder to conclude that the decision maker had actual knowledge of the protected activity."[66] In this case, Jones admits that Pierre was not the ultimate decision maker in her termination,[67] and she has not pointed to any competent summary judgment evidence demonstrating that Pierre had any authority over her termination[68] or that any communications between Pierre, Miranda, and Mittelstaedt related to her protected status.

Plaintiff also argues that it is factually disputed whether Mittelstaedt acted in

---

[65] R. Doc. 29-1 at p. 21.
[66] *Amie v. El Paso Indep. Sch. Dist.*, 253 F. App'x 447, 454–55 (5th Cir. 2007).
[67] R. Doc. 29-1 at p. 19.
[68] Plaintiff states that "Pierre's authority extended beyond rating his subordinates: it extended to their discipline and termination. She claims that on previous occasions Pierre had influenced decisions to terminate PBX operators." R. Doc. 29-1 at p. 20. Notably, Plaintiff admits no other PBX operators were ever actually terminated. However, she states that Pierre recommended another employee be transferred instead of discharged, and his recommendation was accepted. *Id.* at pp. 20–21. In doing so, she cites only to her sworn declaration. *Id.* Her uncorroborated subjective belief that Pierre had authority in previous employment decisions and that this is evidence that he had authority over Plaintiff's termination is insufficient to establish a genuine issue of material fact. R. Doc. 29-1 at pp. 20–21 (citing the declarations of Miranda and Mittelstaedt for the propositions that Pierre spoke to Miranda about the incident, who then spoke to Mittelstaedt). Based on her argument that Pierre had a discriminatory motive, Plaintiff argues that Pierre's discriminatory animus should be imputed to the Hospital through the "cat's paw doctrine." R. Doc. 29 at p. 18. Under the doctrine, Plaintiff must prove that (1) Pierre exhibited a discriminatory animus, and (2) that he "possessed leverage, or exerted influence, over the titular decisionmaker." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004). Plaintiff fails to point to any evidence indicating that Pierre possessed leverage or exerted influence over either Miranda or Mittelstaedt in such a way as to co-opt the decision-making process. *See DePree v. Saunders*, 588 F.3d 282, 288 (5th Cir. 2009) ("Regardless of any evidence of retaliatory animus, DePree offered no evidence that the other Appellees exerted influence over Saunders in such a way as to co-opt her decision making."). Although Plaintiff alleges that Pierre had previously influenced employment decisions by recommending to Cheryl Guma, then Vice President, that another employee Angela Jiles be transferred instead of terminated, a recommendation that Plaintiff claims was accepted by Guma's replacement Dennis Miranda, R. Doc. 29-1 at p. 20, merely making a recommendation does not tend to prove that Pierre exerted influence in a way such as to co-opt Guma or Miranda's decision-making in that case and certainly does not demonstrate that he exerted influence over the decision maker in this case, Mittelstaedt.

good faith by relying upon the witness statements relating to the incident in making the decision to terminate Jones.[69] Although Plaintiff denied making the threatening remarks, in a case involving complaints from other employees "the issue is not the truth or falsity of the allegation, but 'whether the employer reasonably believed the employee's allegation and acted on it in good faith.'"[70] Plaintiff has pointed to no evidence indicating that Mittelstaedt was in bad faith in relying on the written statements filed by Jones's co-workers. Other than unsubstantiated, conclusory allegations that Mittelstaedt acted in bad faith and that the Hospital was actually motivated by discriminatory reasons, Plaintiff fails to demonstrate how her FMLA request was motive for her termination.[71]

On the other hand, the record indicates that the Hospital had before it considerable evidence that Jones violated the Hospital's policies. Numerous co-workers filed written statements to the Hospital in June of 2013 reporting the alleged threatening incident.[72] Their statements were corroborated by the phone call log, which indicated that Jones was on a personal call for thirty-three minutes during the shift in question. Additionally, Plaintiff had a documented history of performance problems prior to her requesting FMLA leave, and her performance records show that she received notice that future problems could result in termination.[73] The Hospital's employee handbook also states that threatening behavior will result in immediate

---

[69] R. Doc. 29 at pp. 20–21.
[70] *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) (quoting *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165 (5th Cir. 1993)).
[71] *See Castay v. Oschsner Clinic Found.*, 13-2492, 2014 WL 432518 at *2 (E.D. La. Feb. 4, 2014) (Morgan, J.). Further, "'a dispute in the evidence concerning . . . job performance does not provide a sufficient basis for a reasonable factfinder to infer that [the] proffered justification is unworthy of credence.'" *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) (quoting *Little v. Republic Ref. Co.*, 924 F. 2d 93, 97 (5th Cir. 1991)).
[72] R. Doc. 29-1 at p. 19.
[73] R. Doc. 23-1 at pp. 14–15. R. Doc. 23-4 at p. 13 (Exhibit 2-B).

dismissal without notice. Mittelstaedt's approval of her termination the day after the alleged incident occurred provides further credence to the Hospital's argument that it terminated Jones because of her violations of the Hospital's policies.[74]

Finally, Jones argues that she received less favorable treatment than other employees. Pretext may be shown "where an employer treats one employee more harshly than other 'similarly situated' employees for 'nearly identical' conduct."[75] Plaintiff offers Angela Jiles ("Jiles"), a former PBX Operator who allegedly was rude and discourteous to a patient's parent over the telephone and transferred to another department, as a comparator.[76] Most problematic for Plaintiff is that she admits in her deposition that no complaints were ever filed against Jiles for making threatening remarks.[77] It is true that both Plaintiff and Jiles had notations of rude and discourteous conduct in their performance histories.[78] However, unlike rude and discourteous conduct, threating another employee falls under the list of offenses that the Hospital's handbook states will result in immediate discharge without notice.[79] Because Plaintiff fails to successfully establish a comparator sufficiently similar to Jones, no genuine issue of material fact arises from the different treatments of Plaintiff and Jiles.[80]

The Court is mindful that it must draw all reasonable inferences in favor of the non-moving party. After careful review of the record, the Court finds that Plaintiff has not carried her burden of proving that the legitimate, nondiscriminatory reasons given

---

[74] R. Doc. 29-1 at p. 19.
[75] *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011)
[76] The last name is spelled "Jiles" in some parts of the opposition while spelled "Giles" in others. *See, e.g.*, R. Doc. 29 at p. 19; R. Doc. 29-1 at p. 22.
[77] R. Doc. 29-5 at p. 152 (Jones's Deposition).
[78] Plaintiff was warned in her counseling notification on October 11, 2012 that if her performance did not improve, further disciplinary action, including possible termination, would result. R. Doc. 23-4 (Exhibit 2-B). Other counseling notices also reference rude and discourteous behavior.
[79] R. Doc. 29-6 (Exhibit 4-A).
[80] *See Lorentz v. Alcon Labs., Inc.*, 535 F. App'x 319, 326 (5th Cir. 2013).

by the Hospital were pretextual or that her FMLA leave request actually played a role in the decision-making process and had a determinative influence on the outcome.[81] Defendants are accordingly entitled to summary judgment on Jones's FMLA retaliation claim.

FMLA Interference Claim

Plaintiff also brings an FMLA interference claim, asserting that even though the Hospital approved her intermittent FMLA leave request, there is a genuine issue of material fact as to whether Jones's supervisor, Pierre, dissuaded her from taking leave and whether Plaintiff was prejudiced by the alleged interference.[82] Plaintiff's opposition states that "Jones, needing the leave, and having applied for and received administrative approval for the leave, was nonetheless dissuaded by her direct supervisor from taking the leave that she had a right to take."[83] Plaintiff points to her verified complaint, deposition, and affidavit in which she testifies that she did not request to take leave because she was deterred by Pierre when he told her soon after her FMLA request was approved that she could not take time off because the Hospital was short staffed at her position.[84]

Defendants claim that, even if it were true that Pierre made this statement, Plaintiff cannot establish that there was prejudice as a result of it because any request

---

[81] *See Shetty v. Hampton Univ.*, 12-58, 2014 WL 280448 at *12 (E.D. Va. Jan. 24, 2014); *see also Johnson v. Spohn*, 334 F. App'x 673, 685 (5th Cir. 2009); *Jenkins v. Methodist Hosps. of Dall., Inc.*, 478 F.3d 255, 261 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).
[82] R. Doc. 29 at pp. 11–12.
[83] *Id.* at p. 12.
[84] *Id.* at pp. 10–12 (Opposition) (stating that Jones testified that Pierre told her she could not take time off and that Jones was dissuaded from taking any FMLA leave); R. Doc. 1 at pp. 3–4 (Verified Complaint) (asserting that she "did not take FMLA leave to which she was entitled" because Pierre told her after he learned of her FMLA request: "You cannot take off. We are short staffed. We can't hire anybody."); R. Doc. 29-9 at pp.3–4 (Plaintiff's Affidavit) ("Walter Pierre informed me on February 7, 2013 that I could not take FMLA leave . . . ."); R. Doc. 29-5 at pp. 122–123 (Jones's Deposition) (describing how she never asked Pierre for leave because of Pierre's statement to Plaintiff).

that Plaintiff actually made to take time off was approved by Pierre, and Jones cannot point to any instance of her being denied leave when requested.[85] Defendants argue that Plaintiff's deposition refers to numerous instances of her missing work or being late for reasons relating to her husband's treatment, some of which were actually approved by Pierre. As a result, the Hospital argues her FMLA interference claim fails because she was not actually dissuaded by his statement and cannot show prejudice.[86] In response, Plaintiff reiterates that she was dissuaded from taking leave because of Pierre's statement and that, as a result, she incurred monetary losses in the form of expenses for taxicabs to take her husband from the dialysis clinic to home and expenses for bringing food from the Hospital cafeteria to her husband nearly every night because she did not have the opportunity to prepare the food at home.[87]

Unlike Plaintiff's claim for retaliation, her interference claim does not require a showing of discriminatory intent.[88] To establish a *prima facie* interference case, Plaintiff must show that (1) she was an eligible employee, (2) her employer was subject to the FMLA's requirements, (3) she was entitled to leave, (4) she gave proper notice of her intention to take FMLA leave, (5) her employer interfered with, restrained, or denied her the benefits to which she was entitled under the FMLA, and (6) she was prejudiced.[89] The employee bears the burden of proving a real impairment of her FMLA rights and resulting prejudice.[90] "The term 'interference with' includes 'not only refusing

---

[85] R. Doc. 23-1 at pp. 18–20.
[86] R. Doc. 23; *See, e.g.*, R. Doc. 29-5 at p. 131–32, 137–41, 144–46, 148–49 (Jones's Deposition).
[87] R. Doc. 29 at pp. 11–13; R. Doc. 29-4, 5 at pp. 119–21 (Jones's Deposition); R. Doc. 29-9 at p. 4 (Sworn Declaration of Keicia Jones).
[88] *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 349 (5th Cir. 2013) (Elrod, J., concurring).
[89] *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013); *Cuellar*, 731 F.3d at 347.
[90] *Lubke v. City of Arlington*, 455 F.3d 489, 497 (5th Cir. 2006) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90 (2002)).

to authorize FMLA leave, but discouraging an employee from using such leave.'"[91] Even if a reasonable jury could find that an employer interfered, restrained, or denied the exercise of FMLA rights, the employee still must point to evidence of prejudice in order to recover.[92] Prejudice exists when an employee loses compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, such as the cost of providing care, or suffers some loss in employment status such that equitable relief is appropriate.[93]

The Court finds that there is a genuine issue of material fact as to whether Pierre discouraged Jones from taking FMLA leave or, alternatively, from taking further FMLA leave. A reasonable jury could find Pierre's statement to Jones as discouraging Plaintiff from taking the FMLA leave to which she was entitled.[94] Additionally, a reasonable jury could determine that the costs incurred by Plaintiff for taxicab fares to transport her husband and increased food expenses qualify as "actual monetary losses sustained by the employee as a direct result of the [FMLA] violation, such as the cost of providing care."[95] If so, there would be prejudice, and Jones could recover actual monetary losses she sustained. Accordingly, summary judgment is denied for Defendants as to Plaintiff's FMLA interference claim.

---

[91] *Bell v. Dall. Cnty.*, 432 F. App'x 330, 334 (5th Cir. 2011) (quoting 29 C.F.R. § 825.220(b) (2010)).
[92] *See Ragsdale*, 535 U.S. at 82.
[93] 29 U.S.C. § 2617(a)(1).
[94] For examples of decisions denying summary judgment as to FMLA interference claims, see *Nixon v. Silverado Hospice of Hous.*, 12-0985, 2013 WL 3973980 at *4–5 (S.D. Tex. July 31, 2013); *Brown v. Lassiter-Ware, Inc.*, 11-1074, 2013 WL 4456546 at *18 (M.D. Fla. Aug. 16, 2013); *Traxler v. Multnomah Cnty.*, 06-1450, 2008 WL 282272 at *16 (D. Or. Jan. 29, 2008).
[95] 29 U.S.C.A. § 2617(a)(1)(A)(i)(II); R. Doc. 29 at p. 12; R. Doc. 29-4, 5 at pp. 119–21 (Jones's Deposition); R. Doc. 29-9 at p. 4 (Sworn Declaration of Keicia Jones). Neither the FMLA nor the regulations define what costs qualify as costs of providing care.

Negligent Supervision

Plaintiff's Complaint also makes a claim for negligent supervision.[96] Defendants contend that this claim must be dismissed because "a negligent supervision claim, solely based upon an underlying employment discrimination claim, is not actionable under Louisiana law."[97] Plaintiff's opposition does not address the negligent supervision claim.[98]

"[V]iolations of anti-discrimination laws do not of themselves give rise to general tort liability, although they might meet the definition of 'fault' under Civil Code article 2315. To hold otherwise would abrogate the legislative remedial scheme for redressing employment discrimination."[99] Having found that Defendants' argument has merit and because Plaintiff has not objected, the negligent supervision claim is dismissed.

**CONCLUSION**

For the aforementioned reasons, **IT IS ORDERED** that Defendants' motion for summary judgment is **GRANTED IN PART** as to Plaintiff's FMLA retaliation and negligent supervision claims, and **DENIED IN PART** as to Plaintiff's FMLA interference claim.

---

[96] R. Doc. 1 at p. 5.
[97] R. Doc. 23-1 at p. 3 (citing *Caletka v. State Farm Mutual Auto. Ins. Co.*, 936 F. Supp. 380 (W.D. La. 1996); *Hornsby v. Enter. Transp. Co.*, 987 F. Supp. 512 (M.D. La. 1997) ("Article 2315 does not create liability for employment discrimination.")).
[98] R. Doc. 29.
[99] *Weathers v. Marshalls of MA, Inc.*, 02-717, 2002 WL 1770927 at *3 (E.D. La. July 31, 2002) (Engelhardt, J.) (citing *Gluck v. Casino Am., Inc.*, 20 F. Supp. 2d 991, 994–95 (W.D. La. 1998)). Additionally, such a negligence cause of action asserted by Plaintiff as a former employee against her former employer is barred by the Louisiana Workers' Compensation Statute. *Id.*; La. R.S. 23:1032. *See also Bertaut v. Folger Coffee Co.*, 06-2437, 2006 WL 2513175 at *3 (E.D. La. Aug. 29, 2006) (Zainey, J.) (stating that the plaintiff's claims for failure to train and failure to supervise are barred because Louisiana's Workers' Compensation Statute is the exclusive remedy for injuries or damages caused by an employer's negligence).

**New Orleans, Louisiana, this 10th day of November, 2014.**

                                      _____
                                      SUSIE MORGAN
                                      UNITED STATES DISTRICT JUDGE